UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH GILMORE, JR.,

                                    Plaintiff,

                                                                        DECISION AND ORDER

                                                                          02-CV-6560L

                      v.

GLEN S. GOORD, et al.,

                                    Defendants.
_____

      Plaintiff, Kenneth Gilmore, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that defendants, all of whom at all relevant times were officials or employees of DOCS, violated his constitutional rights in connection with an Administrative Segregation Hearing held at Wyoming Correctional Facility in November 2000. Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**BACKGROUND**

      On November 8, 2000, DOCS Sergeant David Rice issued an Administrative Segregation Recommendation alleging that "Gilmore has a history of extortion and threats of violence towards other inmates," and recommending that he be placed in administrative segregation. Dkt. #29 Ex. A.

Based on that recommendation, plaintiff was placed in administrative segregation pending a hearing, which was held on November 13 before defendant Captain Kirk Gilbert.

After the hearing concluded, Gilbert issued a decision that same day, finding that "[s]ubstantial evidence has been presented to indicate that [Gilmore's] presence in general population would represent a threat to the safety and security of the facility," and that administrative segregation was therefore warranted. Dkt. #29 Ex. C. Plaintiff remained in administrative segregation at Wyoming until November 27, 2000, when he was transferred to the Attica Correctional Facility, in general population. Dkt. #29 Ex. B.

Plaintiff commenced this action on October 30, 2002. He alleges that Gilbert violated his rights to due process, equal protection, and "basic fairness" by refusing to call certain witnesses that plaintiff had requested and refusing plaintiff's request that Gilbert review certain documents. Plaintiff also alleges that the recommendation issued by Sergeant Rice was too vague to give plaintiff notice of the factual basis for the recommendation, so that plaintiff could prepare a defense. In addition to Gilbert, plaintiff has sued DOCS Commissioner Glenn Goord, Deputy Commissioner Lucien LeClaire, and Director of Inmate Discipline and Special Housing Donald Selsky.[1] The basis for plaintiff's claims against Goord, LeClaire and Selsky is that they "fail[ed] to overturn [Gilbert's] determination ... ." Complaint ¶ 30.

---

[1] A fifth defendant, Paul Levine, was dismissed by order of this Court on September 22, 2003.

**DISCUSSION**

**I. Due Process Claim**

**A. Confinement in Administrative Segregation at Wyoming**

In evaluating an inmate's due process claim with respect to confinement within prison, a court must consider "'(1) whether the plaintiff had a protected liberty interest in not being confined ... and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law.'" *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (quoting *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)). *See also Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001) (even though inmate plaintiff "did not receive the process that was due, he cannot succeed on his [due process] claims if he fails to establish a protected liberty interest"). An inmate has a protected liberty interest in not being confined only if "the deprivation ... is atypical and significant and the state has created the liberty interest by statute or regulation." *Tellier*, 280 F.3d at 80 (quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)); *accord Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).

Although determining whether a particular confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), will involve factual determinations, *Tellier*, 280 F.3d at 80, "the ultimate issue of atypicality is one of law." *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999). Among the factors to be considered are "(1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to

discretionary confinement." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998) (citing *Sandin*, 515 U.S. at 484).

While the Second Circuit has "not established a bright-line rule as to how lengthy a ... confinement will be considered atypical and significant," *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000), the court in *Sealey*, 197 F.3d at 589-90, held that confinement of 101 days in the Special Housing Unit ("SHU") did not meet the *Sandin* standard. Although the court has stated that "under abnormal or unusual SHU conditions, periods of confinement of less than 101 days may implicate a liberty interest," *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citing *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004)), *cert. denied*, 125 S.Ct. 1398 (2005), confinement for brief periods will typically not implicate an inmate's liberty interest absent "especially harsh conditions ... ." *Sealey*, 197 F.3d at 586. *See*, *e.g.*, *Durran v. Selsky*, 251 F.Supp.2d 1208, 1214 (W.D.N.Y. 2003) (granting summary judgment in favor of defendants where "[t]he entire focus of [plaintiff's] allegations [wa]s on the alleged due process violations in connection with the disciplinary hearing, not on the conditions of his confinement" in SHU for ninety days).

In the case at bar, plaintiff was kept in administrative segregation for nineteen days. In the absence of some unusually harsh conditions of confinement, that alone does not implicate a protected liberty interest. *See Sealey*, 197 F.3d at 587 ("confinement for these 18 days alone" did not implicate liberty interest). Plaintiff has identified no such harsh or severe conditions; indeed, as will be discussed below, the focus of his claims of injury is on his subsequent transfer to Attica and the effect of Gilbert's determination on plaintiff's chances for parole. Any due process claims arising out of plaintiff's confinement in administrative segregation at Wyoming must therefore be dismissed.

**B. Transfer from Medium-Security Facility to Maximum-Security Facility**

Plaintiff alleges, and defendants do not appear to dispute, that Wyoming is a medium-security facility, and that Attica is a maximum-security facility. Plaintiff contends that the conditions at Attica were therefore more restrictive than those at Wyoming. For instance, he states that at Wyoming, he lived in a dormitory-type setting, with regular access to a telephone and access to a shower every morning, whereas at Attica he was locked in a small cell with limited access to a telephone and shower. Dkt. #34 at 9.

These allegations also fail to give rise to a due process claim. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State ... ." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Therefore, transfers from one facility to another generally do not implicate any protected liberty interest, even if the transfer involves a change in security classification as well. *See Montayne v. Haymes*, 427 U.S. 236, 243 (1976) ("under the law of [New York] State Haymes had no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred unless found guilty of misconduct"); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (Due Process Clause not implicated where prisoner transferred to institution with more severe rules); *Prins v. Coughlin*, 76 F.3d 504, 507 (2d Cir. 1996) ("a prisoner generally has no due process right to challenge a transfer from one facility to another"); *Sher v. Coughlin*, 739 F.2d 77, 81-82 (2d Cir. 1984) (transfer of prisoner to SHU did not impair any protected liberty interest, where reassignment had an administrative, nonpunitive basis, even if officials were also motivated by desire to punish prisoner); *Freeman v. Goord*, No. 02 Civ. 9033, 2005 WL 3333465, at *10 (S.D.N.Y. Dec. 7, 2005) ("To the extent plaintiff's Due Process claim is

based on the change in his security classification from medium to maximum, defendants are also entitled to summary judgment").

**C. Effect on Parole**

Plaintiff also alleges that Gilbert's findings either have had, or will have, a negative impact effect on the Parole Board's decision whether plaintiff should be released on parole. The Second Circuit has held, however, that New York's parole statute does not provide prisoners with a legitimate expectation of release. *See Marvin v. Goord*, 255 F.3d 40, 44 (2d Cir. 2001); *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001). Plaintiff therefore had no protected liberty interest in parole, and this due process claim fails as well. *Boothe v. Hammock*, 605 F.2d 661, 664 (2d Cir. 1979).

**II. Equal Protection Claim**

Plaintiff also contends that defendants have violated his right to equal protection. He contends that he was singled out for unfavorable treatment because of his activities as a "jailhouse lawyer."[2] It is not clear if plaintiff is referring to his filing of grievances or lawsuits on his own behalf, or to legal assistance that he has rendered to other inmates, though he does indicate that at

---

[2]Although the factual basis for this claim is not spelled out in the complaint (which simply alleges an equal protection violation in perfunctory fashion), but only in plaintiff's response to defendants' motion, in light of plaintiff's *pro se* status I will consider plaintiff's allegations set forth in that response in considering the merits of this claim.

one point he served as an inmate representative to the Inmate Grievance Committee at Orleans Correctional Facility.  *See* Dkt. #34 Ex. A.  Either way, this claim must also be dismissed.[3]

"To prove an equal protection violation, claimants must prove purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (internal citations omitted).  Plaintiff has failed to show any facts tending to show such discrimination.  He sets forth no facts suggesting that defendants acted out of any impermissible motives.  Although he contends that defendants have a "pattern and practice" of using trumped-up charges to remove and transfer inmates who have filed lawsuits or grievances against DOCS officials, he offers no evidence in support of that assertion, other than citations to two court of appeals cases, *Lawrence v. Goord*, 238 F.3d 182 (2d Cir. 2001), and *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997), neither of which supports that claim.  *Lawrence* (which was vacated on appeal, *see Goord v. Lawrence*, 535 U.S. 901 (2002)), simply dealt with whether an inmate plaintiff was required to exhaust his administrative remedies before filing suit. 238 F.3d at 184-86.  Although

---

[3]Although the complaint does not expressly set forth such a claim, these allegations could also be read as asserting a First Amendment retaliation claim based on plaintiff's having exercised his constitutional rights by filing grievances or lawsuits, at least to the extent that he did so on his own behalf.  *See Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) ("the prosecution and settlement of a lawsuit and the filing of grievances [a]re constitutionally protected activities"); *Meriwether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989) (despite prison officials' broad discretion to transfer prisoners, "[t]hey may not, however, transfer them solely in retaliation for the exercise of constitutional rights"); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) ("an inmate does not have an independent right to help *other* prisoners with *their* legal claims") (emphasis added).  Even if I so construed the complaint, however, this claim would also be subject to dismissal because of the complete lack of evidence or specific factual allegations to support it, other than the fact that plaintiff was transferred to Attica.  *See Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (noting ease with which prisoners can characterize "virtually any adverse action ...  as a constitutionally proscribed retaliatory act").

the court in *Hendricks* did hold that the inmate plaintiff was entitled to appointment of counsel in part because his § 1983 retaliation claim was "likely to be of substance," 114 F.3d at 393 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)), that case involved different defendants and events at a different correctional facility than those here.  Even if the Second Circuit had held that Hendricks had *proved* his claim, then, that would not support plaintiff's assertion that the defendants in the instant case have engaged in a pattern and practice of retaliatory transfers.  Plaintiff's equal protection claim must therefore be dismissed as well.  *See Sprau v. Coughlin*, 997 F.Supp. 390, 395 (W.D.N.Y. 1998) ("Plaintiff's wholly conclusory allegations fail to allege an equal protection violation").

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #29) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       February 15, 2006